FILED
2012 Jun-22  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT C

```
 1        IN THE UNITED STATES DISTRICT COURT FOR

 2          THE NORTHERN DISTRICT OF ALABAMA

 3                SOUTHERN DIVISION

 4

 5   CASE NUMBER:  11-CV-03183

 6

 7   MICHAEL LINDSEY,

 8              Plaintiff,

 9              vs.

10   NCO FINANCIAL SYSTEMS, INC.,

11              Defendant.

12

13         S T I P U L A T I O N

14         IT IS STIPULATED AND AGREED, by

15   and between the parties through their

16   respective counsel, that the deposition of

17   KAY LINDSEY may be taken before Michelle L.

18   Parvin, Commissioner, at the offices of Pate

19   & Cochrun, 400 Title Building, 300 Richard

20   Arrington Jr. Boulevard North, Birmingham,

21   Alabama, 35203, on the 13th day of March,

22   2012.

23         IT IS FURTHER STIPULATED AND
```

Exhibit "C"

1    AGREED that it shall not be necessary for any

2    objections to be made by counsel to any

3    questions, except as to form or leading

4    questions, and that counsel for the parties

5    may make objections and assign grounds at the

6    time of trial, or at the time said deposition

7    is offered in evidence, or prior thereto.

8              IT IS FURTHER STIPULATED AND

9    AGREED that notice of filing of the

10   deposition by the Commissioner is waived.

11

12

13

14

15

16

17

18

19

20

21

22

23

```
1                    I N D E X

2

3    EXAMINATION BY:        PAGE NUMBER:

4    Ms. Cannizaro              7

5    Mr. Seals                  37

6    Ms. Cannizaro              39

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
```

```
 1        IN THE UNITED STATES DISTRICT COURT FOR

 2          THE NORTHERN DISTRICT OF ALABAMA

 3                 SOUTHERN DIVISION

 4

 5   CASE NUMBER:  11-CV-03183

 6

 7   MICHAEL LINDSEY,

 8              Plaintiff,

 9              vs.

10   NCO FINANCIAL SYSTEMS, INC.,

11              Defendant.

12

13   BEFORE:

14              Michelle L. Parvin, Certified

15   Court Reporter

16   APPEARANCES:

17                 PATE & COCHRUN by Mr. Whitney

18   Seals, 400 Title Building, 300 Richard

19   Arrington Jr. Boulevard North, Birmingham,

20   Alabama, 35203, appearing on behalf of the

21   Plaintiff.

22                 JAFFE & ERDBERG by Mr. John

23   Crad Hubbard, Suite 817, Frank Nelson
```

 1   Building, 205 20th Street North, Birmingham,

 2   Alabama, 35203, appearing on behalf of the

 3   Plaintiff.

 4                    SESSIONS, FISHMAN, NATHAN &

 5   ISRAEL by Ms. Allison L. Cannizaro, 3850

 6   North, Causeway Boulevard, Suite 200,

 7   Metairie, Louisiana, 70002, appearing on

 8   behalf of the Defendant.

 9                    SESSIONS, FISHMAN, NATHAN &

10   ISRAEL by Mr. James K. Schultz, 55 West

11   Monroe Street, Suite 1120, Chicago, Illinois,

12   60603-5130, appearing on behalf of the

13   Defendant.

14

15

16

17

18

19

20

21

22

23

1              I, Michelle L. Parvin, a Court

2      Reporter of Birmingham, Alabama, acting as

3      Commissioner, certify that on this date, as

4      provided by the Federal Rules of Civil

5      Procedure of the United States District

6      Court, and the foregoing stipulation of

7      counsel, there came before me at 400 Title

8      Building, 300 Richard Arrington Jr. Boulevard

9      North, Birmingham, Alabama, 35203, beginning

10     at 9:06 a.m., KAY LINDSEY, witness in the

11     above cause, for oral examination, whereupon

12     the following proceedings were had:

13

14              KAY LINDSEY,

15     being first duly sworn, was examined and

16     testified as follows:

17

18              THE COURT REPORTER:   Usual

19     stipulations?

20              MR. SEALS:   Usual stipulations

21     will be fine, but because I know you don't

22     practice here in Alabama, not to get

23     complicated, but usually we object just to

1    the form.  The only one I would like is for

2    her to be able to read and sign.  If there

3    are any other stipulations you want to go

4    into, we can.  But that's usually the main

5    ones for me.

6              MR. SCHULTZ:  No, I think that's

7    fine.

8              MR. SEALS:  Okay.

9

10   EXAMINATION BY MS. CANNIZARO:

11

12       Q.    Good morning, Ms. Lindsey.  My

13   name is Allison Cannizaro, and this is Jim

14   Schultz.  And we represent NCO Financial

15   Systems in a lawsuit that was filed by

16   Michael Lindsey.

17       A.    Okay.

18       Q.    Before we get started on the

19   questioning, I just want to go over a couple

20   of things.  Since we have a court reporter

21   here and she's documenting what you're

22   saying, if you could just state your

23   responses instead of nodding or --

1          A.     Okay.

2          Q.     -- giving a nonverbal cue.

3                 If I ask a question that you

4    don't understand, just stop me and I'll

5    rephrase it.  Hopefully, I'll be able to get

6    something intelligent out.

7          A.     Okay.

8          Q.     And if you need to take a break,

9    please just ask and we'll stop for a couple

10   of minutes.

11                Are you under the influence of

12   any kind of medication right now?

13         A.     Nothing that would affect my

14   ability to answer these questions.

15         Q.     Okay.  Great.

16                MR. CANNIZARO:  Ms. Lindsey is

17   produced today pursuant to a deposition

18   notice and agreement between the parties.

19         Q.     Mrs. Lindsey, are you represented

20   by counsel today?

21         A.     No.

22         Q.     No.  Okay.  So, you don't

23   consider Whitney to be your attorney?

 1          A.    I would say no to that question.

 2          Q.    Okay.  Have you done anything to

 3    prepare for this deposition?

 4          A.    I have read the -- you wouldn't

 5    call them minutes but, I guess, the

 6    transcript.

 7          Q.    The complaint in the lawsuit?

 8          A.    No.

 9          Q.    No?

10          A.    No.

11          Q.    The transcript of the recording?

12          A.    Of the recording, yes.

13          Q.    Okay.  Have you met with Whitney

14    before today?

15          A.    No.

16          Q.    No.  Okay.  And the only document

17    that you reviewed was the transcript --

18          A.    The transcript.

19          Q.    -- of the call?

20          A.    That's all I know.

21          Q.    Okay.  Great.  I'm going to talk

22    to you a couple of minutes about your

23    background.  If you could state your full

1   name, please.

2          A.     Kay Pearson Lindsey.

3          Q.     Can you state your address,

4   please?

5          A.     5137 Stratford Road, Birmingham.

6          Q.     Okay.  And who lives in your

7   home?

8          A.     My husband and I.

9          Q.     Okay.  And what is your husband's

10  name?

11         A.     Bob Lindsey.

12         Q.     Bob Lindsey?

13         A.     Uh-huh.

14         Q.     And how long have you been

15  married?

16         A.     Twenty-six years.

17         Q.     Okay.  And what is your

18  relationship with Michael Lindsey?

19         A.     I am his stepmother.

20         Q.     Okay.  And how long have you

21  known him for, approximately?

22         A.     How long have I known him?

23         Q.     Yes.

1          A.     Twenty-six, twenty-seven years.

2          Q.     Okay.  Great.  And I think he's

3     fortyish?

4          A.     I believe so.

5          Q.     Okay.  So, he grew up in your

6     home or --

7          A.     He lived with us for, I would

8     say, two to three years after we were

9     married.

10         Q.     Okay.  And what kind of a

11    relationship do you have with him?

12         A.     We have a good -- I feel like

13    he's one of my children.

14         Q.     Okay.  Do you have any other

15    children?

16         A.     I do.  I have two sons.

17         Q.     Two sons.  Okay.

18         A.     And he has a brother.

19         Q.     Okay.  So, did you discuss this

20    with your son or stepson?

21         A.     I have not discussed anything

22    with him.

23         Q.     Okay.

```
 1          A.    Other than to relate to him the

 2     message that I'd gotten --

 3          Q.    Okay.

 4          A.    -- by phone.

 5          Q.    And what is your highest level of

 6     education?

 7          A.    I have -- well, I have two years

 8     beyond a Master's Degree.

 9          Q.    Okay.  In what?

10          A.    Education.

11          Q.    Education.  Are you currently

12     employed?

13          A.    No, I'm retired.

14          Q.    No.  Okay.  And what did you --

15     what did you do for a living?

16          A.    I had been a teacher, a

17     principal, and then, I was the director of

18     principals for Jefferson County Schools.

19          Q.    Okay.  Great.  Do you have any

20     kind of a criminal history?

21          A.    No.

22          Q.    No.  Have you ever filed a

23     lawsuit before?
```

1          A.     No.

2          Q.     No.   Okay.   Mrs. Lindsey, when

3    did you -- do you know what NCO Financial

4    Systems is?

5          A.     No.

6          Q.     No.   When did you speak with NCO?

7          A.     It was approximately a year ago.

8    I don't even remember looking at the date

9    when I looked over that, but it was -- I

10   think it was approximately a year or so.

11         Q.     Okay.   Were you aware of any kind

12   of financial issues that Michael Lindsey had?

13         A.     No.

14         Q.     No.   Did you know that he owed a

15   debt to Bank of America?

16         A.     No.

17         Q.     No.   Okay.   I am going to play a

18   recording.   And I just kind of -- and this

19   has to do with the conversation that you

20   had --

21         A.     Okay.

22         Q.     -- with NCO.

23                And before I do that, our records

1    show that NCO called you on June 9th, 2011.

2          A.     Okay.

3          Q.     Does that sound to be --

4          A.     That would be about right.

5          Q.     Okay.  Do you remember, you know,

6    what you were doing when they called?

7          A.     I just remember that I was at

8    home.  No, not really.

9          Q.     Who answered the phone?

10         A.     I think I did.

11         Q.     You did.  Okay.

12         A.     But if it was in June, my husband

13   would have been at work.  I would have been

14   retired at that time.  So --

15         Q.     Got you.  So, before that date,

16   you'd never heard of NCO?

17         A.     No.

18         Q.     Did you know that NCO was a debt

19   collector?

20         A.     No.

21         Q.     No.  Okay.  Can you tell me in

22   your own words what you remember -- what

23   happened during the conversation?

1        A.     I remember that it was a lady

2   that called.  And she said that she was

3   calling -- that I -- I think the term she

4   used was a reference of Michael's, which I

5   thought was a bit odd.  I didn't know what I

6   would be a reference for.

7        Q.     Uh-huh.

8        A.     As she went on, she -- I thought

9   it was a bit unusual the way that she asked

10  about his phone number.  That she wanted to

11  make sure her contact information was

12  correct.  That was kind of a red flag for me.

13  I thought that there was something that she

14  was trying to get or trying to do.  And she

15  said, could I verify that, I believe, or

16  could I leave my number and -- name and

17  number and you have him call?  And I said,

18  yes, I would -- I would take her number.

19       Q.     Okay.  And when you got off the

20  phone, what did you -- what were you

21  thinking?

22       A.     I was thinking that -- I think

23  she -- I think I asked her what it was in

```
 1   reference to.  And I think she said a
 2   personal financial matter, I believe.
 3        Q.   Okay.  All right.  I am going to
 4   play the recording now.  And I just kind of
 5   want you to listen to it --
 6        A.   Okay.
 7        Q.   -- and then, let me know if this
 8   is, you know --
 9        A.   Okay.
10        Q.   -- the entire actual conversation
11   that occurred.
12
13             (Whereupon, the recording was
14             played.)
15
16        Q.   (BY MS. CANNIZARO)  Does that
17   accurately reflect your conversation?
18        A.   I think so.
19        Q.   Okay.  And is this the only
20   conversation that you had with NCO?
21        A.   It seems like there was a second
22   call.  I'm not certain of that.  It just --
23   you know, it's been almost a year.  In my
```

 1   mind, it seemed like there was a second call.

 2        Q.    Okay.

 3        A.    But if you asked me to swear to

 4   that, I couldn't.

 5        Q.    Okay.

 6        A.    But my recollection was that

 7   there might have been a second call.

 8        Q.    Okay.  After this conversation?

 9        A.    I think.

10        Q.    And do you have any idea

11   approximately how long --

12        A.    No.

13        Q.    -- after this conversation?

14        A.    I would think within a couple of

15   weeks, but, again, I'm not positive.  I just

16   seem to remember that.  I didn't -- I don't

17   know.

18        Q.    From NCO?

19        A.    The same company, yes.

20        Q.    The same company.  Okay.

21             Mrs. Lindsey, are you in any way

22   asserting that NCO violated your rights by

23   placing that phone call?

```
 1          A.    Well, I don't think it's

 2    appropriate to call my home about someone

 3    else's debt if indeed that's what it was.

 4          Q.    I understand.  Are you alleging

 5    that NCO harassed you in any way?

 6          A.    Well, that's a strong word.  I

 7    just think it's inappropriate --

 8          Q.    Inappropriate.

 9          A.    -- to contact me about someone

10    else's debt.

11          Q.    So, you don't have any sort of

12    claim that you're intending to file against

13    NCO?

14          A.    I don't know that I have an

15    answer for that.

16          Q.    Okay.  Do you think that NCO was

17    false and deceptive in its representations to

18    you?

19          A.    I think when they called and

20    asked if they could, in essence, verify a

21    contact number, I think that was their way of

22    trying to get information from me to contact

23    Michael.  I do think that.
```

 1        Q.    Now, I understand what you're

 2   saying.  But in terms of your personal being,

 3   do you think that they did anything false and

 4   deceptive to you?

 5        A.    Well, I think that goes back to

 6   what I just said.  If they're trying to

 7   contact me to find a different way, a

 8   different number, a different means to

 9   contact him, then, I think that is deceptive.

10        Q.    And so, at this point, do you

11   have any intentions to file a claim against

12   NCO?

13        A.    Well, that's, in essence, I think

14   what you asked me awhile ago --

15        Q.    Yes.

16        A.    -- right?

17              I just don't have an answer for

18   that right now.

19        Q.    Okay.  All right.  Well, let's go

20   back to after the call.

21        A.    Uh-huh.

22        Q.    Can you tell me what you did

23   after the call?

```
 1         A.    At some point, I don't remember
 2    if it was that day or the next day, it
 3    probably was that day, that I contacted
 4    Michael and gave him the information.
 5         Q.    Okay.  And --
 6         A.    I did not ask him what was going
 7    on.
 8         Q.    You didn't?
 9         A.    That is not my business.  So, I
10    did not.
11         Q.    Okay.  And what did he tell you?
12         A.    He just said, okay.  He asked me
13    what they said.  I told him pretty much what
14    I remembered at that time, because I
15    remembered it was not a long conversation.
16    So, I told him exactly what was said.
17         Q.    So, at any -- you didn't tell him
18    that they told -- you didn't tell Michael
19    that the NCO representative told you anything
20    about a debt?
21         A.    I pretty much relayed exactly
22    what was told to me, because, again, it was a
23    short conversation.
```

1          Q.     Right.

2          A.     And I felt like at that time, I

3   remembered it, because it was a short period

4   of time.

5          Q.     Sure.  And you didn't have any

6   knowledge of this Bank of America debt at

7   that time?

8          A.     (Witness shakes head.)

9          Q.     And --

10         A.     I don't until today.

11         Q.     Until today.  Okay.  So, you said

12  you had -- earlier, that you had a good

13  relationship with Michael?

14         A.     I've always had a good

15  relationship.

16         Q.     That's good.  Did this call

17  affect your opinion of him at all?

18         A.     Well, it didn't, because I didn't

19  know what the call was about.

20         Q.     Right.  So --

21         A.     Except that I felt like someone

22  was calling to get information about him.

23         Q.     Were you aggravated that they

```
 1   were calling you?

 2        A.    Uh-huh.

 3        Q.    Yes?

 4        A.    Uh-huh.

 5        Q.    Did it cause any kind of

 6   strain --

 7             MR. SEALS:  Hang on.  Would you

 8   say that --

 9             THE WITNESS:  I'm sorry.

10             MR. SEALS:  I think that was a

11   nonverbal.  I want to make sure that's on the

12   record.

13             THE WITNESS:  I'm sorry.

14             MR. SEALS:  Was your answer to

15   that last question yes?

16        A.    Yes, I found that aggravating.

17        Q.    (BY MS. CANNIZARO)  And has your

18   relationship been strained as a result of

19   your aggravation?

20        A.    No.

21        Q.    No.  And you still think of

22   Michael as being a good guy, and you still

23   love him?
```

 1          A.    Certainly.  Certainly.

 2          Q.    Okay.  When did you learn that

 3    NCO was a debt collector?

 4          A.    Well, I think -- I think I must

 5    have figured that out when I asked the

 6    question, what is this concerning, and I

 7    don't remember exact response, said

 8    something.

 9          Q.    About a financial matter?

10          A.    A personal financial matter, I

11    believe.

12          Q.    So, at that point, you knew that

13    NCO was a debt collector?

14          A.    Well, I didn't know what it was,

15    but I had -- I had a suspicion that it was

16    something to do with that.

17          Q.    Okay.  So, did you have any

18    suspicion that he was having any kind of

19    financial problems to make you think that a

20    debt collector was calling?

21          A.    No.

22          Q.    No.  Do you have any idea where

23    the debt came from?

```
 1          A.    No.

 2          Q.    No.  Okay.  Do you have any kind

 3    of personal stake in this litigation?

 4          A.    No.

 5          Q.    No.  You're not going to get a

 6    cut of --

 7          A.    No.

 8          Q.    -- whatever he receives?

 9          A.    No.

10                MS. CANNIZARO:  I'm just kidding,

11    Whitney.

12          Q.    Did you have a chance to review

13    the complaint that was filed in this matter?

14          A.    No.

15          Q.    No, never looked at it?

16          A.    Huh-uh.

17          Q.    And what did -- what did Michael

18    tell you when -- did Michael call you or did

19    Whitney call you to come testify today?

20          A.    Michael told me that I was going

21    to need to do a deposition.

22          Q.    Okay.  And what were you

23    thinking?
```

```
 1          A.    He really didn't tell me anything

 2    about it.  In my line of work, in

 3    education --

 4          Q.    Uh-huh.

 5          A.    -- you know, I've had to deal

 6    with attorneys.

 7                And I just don't ask questions

 8    until it's time for me to know what I need to

 9    know.  And then, I spoke briefly with Whitney

10    and asked if I could see the notes from that.

11    And that's been it.  I haven't asked

12    questions.

13          Q.    So, when you spoke with Whitney,

14    is that today or --

15          A.    I spoke with him yesterday or day

16    before.

17          Q.    Yesterday or day before.  And he

18    gave you a copy of the transcript?

19          A.    Uh-huh.

20          Q.    What else did you guys talk

21    about?

22          A.    Nothing.

23          Q.    Nothing else.  You just looked at
```

 1    the --

 2            A.    (Witness nods head.)

 3            Q.    Okay.  So, when Michael asked you

 4    to testify, he just said, I need you to come?

 5            A.    No, he just said, I need you to

 6    do a deposition concerning the phone call

 7    that was last year.

 8            Q.    And you didn't say why?

 9            A.    (Witness shakes head.)

10            Q.    No?

11            A.    (Witness shakes head.)

12                  MR. SCHULTZ:  It needs to be out

13    loud.

14                  THE WITNESS:  I'm sorry.

15            A.    No.

16            Q.    (BY MS. CANNIZARO)  No.

17            A.    Again, I assume whatever business

18    it is, y'all would ask me the questions, I

19    would answer the questions.

20            Q.    Okay.  I mean, you had to take

21    time out of your day to do this.

22            A.    I did.

23            Q.    And you had no curiosity as to

1    why you were coming to testify before today?

2         A.    I just don't think it's my

3    business.  So, I didn't.

4         Q.    You did not.

5              MS. CANNIZARO:  Okay.  All right.

6    I am going to take a quick break --

7              THE WITNESS:  Okay.

8              MS. CANNIZARO:  -- if that's okay

9    with you, all right, and review my notes.

10             And then, if I have any final

11   questions, I'll ask them.

12

13             (Whereupon, a brief recess was

14             taken.)

15

16        Q.    (BY MS. CANNIZARO)  All right.

17   Mrs. Lindsey, I just have a few more

18   questions.

19             Okay.  I want to go back to the

20   call that I played earlier, the one that you

21   allege is the first call.

22        A.    Uh-huh.

23        Q.    Who answered the call?

1          A.    Well, obviously, now, it was my

2     husband.

3          Q.    Okay.

4          A.    I don't know what day of that

5     week that was.  He works.  And so, I don't

6     know.

7          Q.    But it was your husband, Bob?

8          A.    Uh-huh.  It sounded like his

9     voice.

10          Q.    No, I understand.  Do you have

11     caller ID?

12          A.    I do.

13          Q.    Did you or Bob look at the caller

14     ID before the call?

15          A.    (Witness shakes head.)

16          Q.    No?

17          A.    I didn't.  I don't think he did,

18     because he just -- sounded like he just

19     handed me the phone.

20          Q.    So, when you answered the call,

21     you didn't know who was calling?

22          A.    No.

23          Q.    Okay.

1          A.     I didn't.

2          Q.     And I also want to talk about

3    this second call that you say possibly may

4    have occurred.  Do you have any evidence of

5    that call?

6          A.     I don't.

7          Q.     No.  So, you don't have any

8    caller ID records of it?

9          A.     I don't.

10         Q.     Okay.

11         A.     Just in my mind, it just seemed

12   like I remember the second call.

13         Q.     Do you remember who you spoke

14   with?

15         A.     It would have been a female.

16   Whether it was the same person or not, I

17   don't know.  And I can't swear that I got a

18   second call.  That's just what I thought I

19   remembered.

20         Q.     You know, my client's records

21   only show that there was one call to you.

22         A.     Okay.

23         Q.     Is it possible that someone else

1    could have been calling?

2           A.    In my mind, I thought it was the

3    same company, person.  Again, I can't swear

4    to that.  So --

5           Q.    Okay.

6           A.    Could be an error on my part.

7           Q.    So, it is possible that some

8    other company was calling?

9           A.    I would have -- I would have, in

10   my mind, separated that as another company.

11   And that's not how I remember it.

12          Q.    Okay.  I understand it's not how

13   you remember it, but is it possible that

14   another company was calling?

15                MR. SEALS:  Object.  Asked and

16   answered.

17          A.    That's just not how I remember

18   it.  So, I don't think so, no.

19          Q.    (BY MS. CANNIZARO)  Okay.  But

20   it's --

21          A.    I think I would have remembered

22   it if it were another company, because, then,

23   I would have said, well, gee, that's two

1    different companies.

2         Q.    And did you call Mike after the

3    second call?

4         A.    I feel like I would have -- I

5    feel like I would have called him again.

6         Q.    Okay.  And do you remember what

7    you discussed during the second call?

8         A.    Well, again, I think we're sort

9    of supposing.  You know, I said I think I

10   remember it.  I'm not sure.  If it were, I

11   would have called him and done basically what

12   I did the first time, and that was to give

13   him the information.

14        Q.    But you don't remember calling

15   him a second time?

16        A.    Well, I think we're getting a

17   little bit twisted here.  I think there was a

18   second call.

19        Q.    Right.

20        A.    If there were, I would have

21   called him.  That's the best way I know to

22   answer that.

23        Q.    Okay.  But you don't have any

1    evidence of the call?

2         A.    I don't.

3         Q.    And you don't remember what you

4    discussed during the call?

5         A.    No.

6         Q.    Okay.  And let's talk a little

7    bit more about your relationship with

8    Michael.

9         A.    Okay.

10        Q.    What does he call you?

11        A.    He calls me Kay.  Sometimes he

12   calls me Nana, because that's what the

13   grandchildren call me.

14        Q.    I understand.  How often do you

15   speak to him?

16        A.    Every week.

17        Q.    Every week?

18        A.    Uh-huh.

19        Q.    Around June, did you speak to him

20   every week or more or less?

21        A.    I have no idea.

22        Q.    You don't remember?

23        A.    No.

```
 1          Q.    Is your frequency of contact with

 2    him the same after the call?

 3          A.    I mean, the call wouldn't have

 4    changed any contact I would have had with

 5    him.

 6          Q.    How often do you see him?

 7          A.    I don't know.  I may see him once

 8    a week.  It may be a couple of weeks that I

 9    don't.

10          Q.    Do you live close by?

11          A.    We do.

12          Q.    Okay.  And I understand he has

13    children.  So --

14          A.    He does.

15          Q.    -- you and your husband like to

16    see the grandchildren?

17          A.    Sure.

18          Q.    When you saw him after the call,

19    did it seem that he was embarrassed or --

20          A.    I have no recollection of that.

21    I don't think that there would have been

22    anything unusual.

23          Q.    Okay.  So, you don't remember him
```

1   avoiding you or --

2           A.    I just -- I don't have any

3   recollection of anything unusual.

4           Q.    Okay.  Have you ever spoken to

5   him about his finances before?

6           A.    About his personal finances, I

7   would say, no.  You know, I might say how's

8   business going or that kind of thing.  It's

9   just a general comment about things, but --

10          Q.    You never --

11          A.    -- I don't discuss his bills with

12  him.

13                I don't discuss bills with any of

14  my children.

15          Q.    I understand.  Do you have any

16  idea as to why he -- if there's something

17  going on in his life that would have

18  prevented him from paying bills?

19          A.    No.

20          Q.    No.  Okay.  Just to clarify.

21  When you say that you didn't speak with him

22  regarding his finances, did you speak with

23  him regarding his finances before the call?

```
 1          A.     (Witness shakes head.)

 2          Q.     No?

 3          A.     No.  No.  Sorry.

 4          Q.     Did you speak with him regarding

 5   his finances after the call?

 6          A.     No.

 7          Q.     No.  And he's never confided in

 8   you as to any kind of financial trouble he's

 9   having?

10          A.     No.

11          Q.     No.  Okay.  Could there have been

12   any kind of negative impact on your

13   relationship as a result of this call?

14          A.     No.

15          Q.     No.  And I also -- did you meet

16   with Whitney today before this deposition?

17          A.     I just went in and met him.

18          Q.     You met him at -- this is the

19   first time you've ever met him?

20          A.     Uh-huh.

21          Q.     What did you talk about?

22          A.     He asked me if I'd like some

23   water or something to drink.
```

```
 1        Q.    Okay.

 2        A.    I said, I'd like some water.

 3              MR. SCHULTZ:  Is that that

 4   southern hospitality we all hear about?

 5        Q.    (BY MS. CANNIZARO)  Did he tell

 6   you what to expect?

 7        A.    No.

 8        Q.    No.  And he didn't --

 9        A.    The only thing, they said it's

10   pretty standard.  I don't know who said

11   standard or I don't know if that's my word

12   "standard".  But I haven't discussed it.

13        Q.    Okay.

14              MS. CANNIZARO:  I think that's

15   all I have.

16              THE WITNESS:  Okay.

17              MS. CANNIZARO:  Thank you, Ms.

18   Lindsey --

19              THE WITNESS:  Sure.

20              MS. CANNIZARO:  -- for your time.

21

22

23
```

```
 1    EXAMINATION BY MR. SEALS:

 2

 3         Q.    Ms. Lindsey, I just have

 4    something very briefly I want to clarify.

 5    Earlier, Mrs. Cannizaro asked you about false

 6    and deceptive, and I'm not getting the words

 7    correctly, but something along the lines of,

 8    was the phone call, in your mind, false,

 9    deceptive, et cetera.  I know that before we

10    heard the recording, you mentioned that you

11    were told you were a reference.  And I think

12    you heard that on the phone call, did you

13    not?

14         A.    Uh-huh.

15         Q.    You did, yes?

16         A.    I did hear that.  I'm sorry.

17         Q.    That's all right.

18               To your knowledge, has Mike ever

19    asked you to be any sort of financial

20    reference for him?

21         A.    No.

22         Q.    Okay.  To your knowledge, has he

23    ever specifically told you he's going to use
```

1    you or plans to use you as any sort of

2    financial reference?

3         A.    Not that I remember.

4         Q.    Okay.

5         A.    Again, my question about the

6    reference is what made me ask the purpose of

7    the call.

8         Q.    Yes, ma'am.  I understand that.

9    And I think you made this clear, but I want

10   to be sure that I'm clear on it.

11        A.    Okay.

12        Q.    You didn't know who NCO Financial

13   was at the time they said they were NCO

14   Financial?

15        A.    Uh-huh.

16        Q.    Is that correct?

17        A.    Yeah.

18        Q.    Okay.  And then, I want to be --

19   I want to be clear.  You said that them

20   asking or saying a personal business or

21   personal financial matter led, in your mind,

22   to make you think that it was a debt

23   collection type call; did I hear that

1    correctly?

2         A.    Yes.

3              MR. SEALS:  That's really all I

4    have, ma'am.

5              THE WITNESS:  Okay.

6              MR. SEALS:  If y'all want to step

7    out, you can.

8              MR. SCHULTZ:  No.

9

10   FURTHER EXAMINATION BY MS. CANNIZARO:

11

12        Q.    Ms. Lindsey, just a couple more

13   questions.

14        A.    Okay.

15        Q.    Following up on Whitney's last

16   question regarding that you assumed it was a

17   debt collector, did NCO ever tell you that

18   they were calling regarding a debt?

19        A.    No.

20        Q.    No.  Did they reference a

21   creditor?

22        A.    No.

23        Q.    Did they tell you that this is a

1   debt collection call?

2        A.    No.

3        Q.    And before that call, you had

4   never heard of NCO; is that correct?

5        A.    Correct.

6        Q.    So, what formed your belief that

7   it was a debt collection call?

8        A.    Several things.  Reference, which

9   I didn't remember being a reference.  Trying

10  to get or trying to verify their information

11  about how to contact him.

12       Q.    Uh-huh.

13       A.    That sort of sent up a red flag

14  to me.  And then, the last part when I asked,

15  you know, what's the purpose of the call,

16  their response.

17       Q.    It was a personal business --

18       A.    Some of those things made me

19  think that.

20       Q.    Have you ever received a

21  collection call before?

22       A.    Personally?

23       Q.    Yes.

1        A.    Last month when I started using

2    on-line banking, and I messed up how I paid

3    AT&T.

4              MR. SCHULTZ:  We've all done

5    that.

6        A.    And they turned off my cell

7    phone.  And then, I realized that I didn't

8    hit submit.

9        Q.    (BY MS. CANNIZARO)  But prior to

10   June, had you ever received a collection

11   call?

12       A.    I don't think -- I don't think

13   I've ever received a collection call that I

14   can remember.

15       Q.    Okay.

16       A.    But there's lots of information

17   out there about people who call, right?

18       Q.    Do you read blogs?

19       A.    No, I don't read blogs.  But I'm

20   just saying, there's lots of advertisements

21   for attorneys and whatever out there about

22   that.  So, I think people understand when you

23   get certain calls, what the implication might

```
 1    be.
 2         Q.    Okay.  So, couldn't it have been
 3    possible that Whitney hadn't --
 4              MS. CANNIZARO:  I'm sorry,
 5    Whitney.
 6         Q.    -- that Michael had used you as a
 7    reference for some kind of loan or --
 8         A.    Is it possible?  I suppose it's
 9    possible.
10         Q.    Let me just follow up on that.
11    What caused you to think that it wasn't
12    regarding, you know, a loan that he was
13    looking for?
14         A.    Well, the three things that I
15    just mentioned to you awhile ago.
16         Q.    The reference number, personal
17    business matter, and the contact information?
18         A.    And trying to -- I felt like she
19    was trying to get his phone number or some
20    kind of personal information like that.
21         Q.    And you didn't give the phone
22    number, because you didn't know --
23         A.    Because I didn't know what it
```

1   was, and I don't give out peoples' phone

2   numbers that I don't know a reason for their

3   business.

4              MS. CANNIZARO:  Okay.  I think

5   that's all.  Thank you very much for your

6   time.

7              THE WITNESS:  Sure.

8         FURTHER DEPONENT SAITH NOT.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

```
 1              C E R T I F I C A T E

 2

 3   STATE OF ALABAMA     )

 4   JEFFERSON COUNTY     )

 5              I hereby certify that the above

 6   and foregoing deposition was taken down by me

 7   in stenotype, and the questions and answers

 8   thereto were transcribed by means of

 9   computer-aided transcription, and that the

10   foregoing represents a true and correct

11   transcript of the testimony given by said

12   witness upon said hearing.

13              I further certify that I am

14   neither of counsel, nor of kin to the parties

15   to the action, nor am I an anywise interested

16   in the result of said cause.

17

18              s/s Michelle L. Parvin

19                 MICHELLE L. PARVIN

20              Certified Court Reporter

21                 License Number 126

22            Commission expires on 9/30/12

23
```

**WORD INDEX**

**< 1 >**
**1120** 5:11
**11-CV-03183** 1:5
 4:5
**12** 44:22
**126** 44:21
**13th** 1:21

**< 2 >**
**200,** 5:6
**2011.** 14:1
**2012.** 1:22
**205** 5:1
**20th** 5:1

**< 3 >**
**30** 44:22
**300** 1:19 4:18
 6:8
**35203** 1:21 4:20
 5:2 6:9
**37** 3:5
**3850** 5:5
**39** 3:6

**< 4 >**
**400** 1:19 4:18
 6:7

**< 5 >**
**5137** 10:5
**55** 5:10

**< 6 >**
**60603-5130** 5:12

**< 7 >**
**7** 3:4
**70002** 5:7

**< 8 >**
**817** 4:23

**< 9 >**
**9** 44:22
**9:06** 6:10
**9th** 14:1

**< A >**
**a** 11:10 12:16,
 22 13:14, 17
 16:1 18:20 19:7
 20:22 22:10
 23:19 24:5
 29:17 31:16, 17
 33:8 39:16, 20,
 23 40:20 42:6
**a.m** 6:10
**ability** 8:14
**able** 7:2 8:5
**about** 15:10
 20:20 25:2, 21
 29:2 40:11 41:21
**about.** 21:19
**above** 6:11 44:5
**accurately** 16:17
**acting** 6:2
**action** 44:15
**actual** 16:10
**address,** 10:3
**advertisements**
 41:20
**affect** 8:13 21:17
**after** 19:23
**again.** 31:5
**against** 18:12
 19:11
**aggravated** 21:23
**aggravating.**
 22:16
**aggravation**
 22:19
**ago** 19:14
**ago.** 13:7 42:15
**AGREED** 1:14
 2:1, 9
**agreement** 8:18
**ALABAMA** 1:2,
 21 4:2, 20 5:2
 6:2, 9, 22 44:3
**all** 36:15
**allege** 27:21
**alleging** 18:4
**Allison** 5:5 7:13
**am** 44:13
**America** 13:15

 21:6
**an** 18:14
**and** 1:15, 23 2:8
 6:15 15:16
 18:19 19:3
 25:10, 11 30:11,
 15 37:6 38:9
 44:6
**another** 30:14
**answer** 8:14
 18:15 19:17
 22:14 26:19
 31:22
**answered** 14:9
 27:23 28:20
**answered.** 30:16
**answers** 44:7
**any** 2:1, 2 8:12
 12:19 21:5
 23:17 29:7
 31:23 34:2, 15
 35:12
**anything** 11:21
 20:19 25:1 33:22
**anywise** 44:15
**APPEARANCES:**
 4:16
**appearing** 4:20
 5:2, 7, 12
**appropriate** 18:2
**approximately**
 10:21 13:7, 10
 17:11
**are** 7:3
**Arrington** 1:20
 4:19 6:8
**as** 6:2, 3
**asked** 15:9, 23
 17:3 18:20
 19:14 20:12
 23:5 25:10, 11
 26:3 30:15
 35:22 37:5, 19
**asked,** 40:14
**asking** 38:20
**asserting** 17:22
**assign** 2:5
**assume** 26:17
**assumed** 39:16

**at** 6:10 14:7
 21:6 25:23 41:3
**attorney** 8:23
**attorneys** 41:21
**attorneys.** 25:6
**avoiding** 34:1
**aware** 13:11
**awhile** 19:14
 42:15

**< B >**
**back** 19:5, 20
 27:19
**background** 9:23
**Bank** 13:15 21:6
**banking** 41:2
**basically** 31:11
**be.** 42:1
**because** 28:18
**been** 10:14
 14:13 33:21
 35:11 42:2
**before** 9:14
**before.** 25:16
**BEFORE:** 4:13
**beginning** 6:9
**behalf** 4:20 5:2,
 8, 12
**being** 6:15
**being,** 19:2
**belief** 40:6
**believe** 11:4
 15:15
**believe.** 16:2
 23:11
**best** 31:21
**beyond** 12:8
**bills** 34:11, 13, 18
**Birmingham** 6:2,
 9
**Birmingham,**
 1:20 4:19 5:1
**Birmingham.** 10:5
**bit** 15:5, 9 31:17
 32:7
**blogs** 41:18, 19
**Bob** 10:11, 12
 28:7, 13
**Boulevard** 1:20

4:19  5:6  6:8
**break**  27:6
**break,**  8:8
**brief**  27:13
**briefly**  25:9  37:4
**brother.**  11:18
**Building**  1:19
4:18  5:1  6:8
**business**  20:9
26:17  27:3  34:8
38:20  40:17
42:17
**business.**  43:3
**but**  23:15  30:19
**by**  1:14  7:15
8:20  17:22

**< C >**
**call**  9:5, 19
15:17  16:22
17:23  18:2
19:23  21:16, 19
24:18, 19  26:6
27:20, 23  28:14
29:3, 5, 18, 21
31:2, 3, 7  32:1, 4,
10, 13  33:2, 3
34:23  35:5, 13
37:8, 12  38:23
40:1, 3, 7, 21
41:11, 13, 17
**call,**  28:20  33:18
40:15
**call.**  17:1, 7
19:20  27:21
29:12  31:18  38:7
**called**  14:1, 6
15:2  18:19  31:5,
11, 21
**caller**  28:11, 13
29:8
**calling**  15:3
21:22  22:1
23:20  28:21
30:1, 8, 14  31:14
39:18
**calls**  32:11, 12
41:23
**can**  41:14
**can.**  39:7

**Cannizaro**  3:4, 6
5:5  7:13  8:16
16:16  22:17
24:10  26:16
27:5, 8, 16  30:19
36:5, 14, 17, 20
37:5  41:9  42:4
43:4
**CANNIZARO:**
7:10  39:10
**CASE**  1:5  4:5
**cause**  6:11  22:5
**cause.**  44:16
**caused**  42:11
**Causeway**  5:6
**cell**  41:6
**certain**  16:22
41:23
**Certainly**  23:1
**Certainly.**  23:1
**Certified**  4:14
44:20
**certify**  6:3  44:5,
13
**cetera**  37:9
**chance**  24:12
**changed**  33:4
**Chicago**  5:11
**children**  11:15
33:13
**children.**  11:13
34:14
**Civil**  6:4
**claim**  18:12
19:11
**clarify.**  34:20
37:4
**clear**  38:9, 10, 19
**client's**  29:20
**close**  33:10
**Cochrun**  1:19
4:17
**collection**  38:23
40:1, 7, 21  41:10,
13
**collector**  14:19
23:3, 13, 20  39:17
**come**  24:19  26:4
**coming**  27:1
**comment**  34:9

**Commission**
44:22
**Commissioner**
1:18  2:10  6:3
**companies.**  31:1
**company**  17:19,
20  30:3, 8, 14, 22
**company.**  30:10
**complaint**  9:7
24:13
**complicated**  6:23
**computer-aided**
44:9
**concerning**  23:6
26:6
**confided**  35:7
**consider**  8:23
**contact**  15:11
18:9, 21, 22  19:7,
9  33:1, 4  40:11
42:17
**contacted**  20:3
**conversation**
13:19  14:23
16:10, 17, 20
17:8, 13
**conversation.**
20:15, 23
**copy**  25:18
**correct**  15:12
38:16  40:4  44:10
**Correct.**  40:5
**correctly**  37:7
39:1
**could**  15:16  30:1
**couldn't.**  17:4
**counsel**  1:16
2:2, 4  6:7  8:20
44:14
**County**  12:18
44:4
**couple**  7:19  8:9
9:22  17:14  33:8
39:12
**COURT**  1:1  4:1,
15  6:1, 6, 18
7:20  44:20
**Crad**  4:23
**creditor**  39:21

**criminal**  12:20
**cue.**  8:2
**curiosity**  26:23
**currently**  12:11
**cut**  24:6

**< D >**
**date**  6:3  13:8
**date,**  14:15
**day**  1:21  20:2, 2,
3  25:15, 17
26:21  28:4
**deal**  25:5
**debt**  13:15
14:18  18:3
20:20  21:6  23:3,
13, 20, 23  38:22
39:17, 18  40:1, 7
**debt.**  18:10
**deceptive**  18:17
19:4  37:6, 9
**deceptive.**  19:9
**Defendant.**  1:11
4:11  5:8, 13
**Degree.**  12:8
**DEPONENT**  43:8
**deposition**  1:16
2:6, 10  8:17  9:3
26:6  35:16  44:6
**deposition.**  24:21
**did**  13:3  19:22
20:10  24:18
33:19
**did,**  28:17
**did.**  14:10  26:22
**didn't**  21:18  41:7
**didn't.**  27:3  29:1
**different**  19:7, 8,
8  31:1
**director**  12:17
**discuss**  11:19
34:11, 13
**discussed**  11:21
31:7  32:4  36:12
**DISTRICT**  1:1, 2
4:1, 2  6:5
**DIVISION**  1:3  4:3
**do**  19:3  26:6
**do.**  28:12  33:11
**document**  9:16

documenting 7:21
does. 33:14
doing 14:6
done 41:4
don't 6:21 8:4, 22 17:16 23:7 28:5 29:17
don't. 29:6, 9 32:2 33:9
drink. 35:23
duly 6:15

< E >
E 44:1
earlier 21:12 27:20 37:5
education 12:6, 11 25:3
Education. 12:10
else 29:23
else's 18:3, 10
embarrassed 33:19
employed 12:12
entire 16:10
ERDBERG 4:22
error 30:6
essence 18:20 19:13
et 37:9
ever 37:18, 23
every 32:20
evidence 2:7 29:4 32:1
exact 23:7
exactly 20:16, 21
EXAMINATION 3:3 6:11 7:10 37:1 39:10
examined 6:15
expect 36:6
expires 44:22

< F >
false 18:17 19:3 37:5
false, 37:8
Federal 6:4
feel 11:12 31:4, 5

felt 21:2, 21 42:18
female. 29:15
figured 23:5
file 18:12 19:11
filed 7:15 12:22 24:13
filing 2:9
final 27:10
finances 34:5, 6, 22, 23 35:5
FINANCIAL 1:10 4:10 7:14 13:3, 12 16:2 23:9, 10, 19 35:8 37:19 38:2, 12, 14, 21
find 19:7
fine 6:21
fine. 7:7
first 6:15 27:21 31:12 35:19
FISHMAN 5:4, 9
flag 15:12 40:13
follow 42:10
following 6:12 39:15
follows: 6:16
FOR 1:1 4:1 7:1 19:17 41:21
for. 15:6
foregoing 6:6 44:6, 10
form 2:3 7:1
formed 40:6
fortyish 11:3
found 22:16
Frank 4:23
frequency 33:1
full 9:23
FURTHER 1:23 2:8 39:10 43:8 44:13

< G >
gave 25:18
gee 30:23
general 34:9
get 6:22 8:5 41:23

getting 31:16 37:6
give 31:12 42:21 43:1
given 44:11
giving 8:2
go 7:3, 19 19:19 27:19
goes 19:5
going 9:21 13:17 16:3 20:6 24:5, 20 27:6 34:8, 17 37:23
Good 7:12 11:12 21:12, 14, 16 22:22
gotten 12:2
grandchildren 32:13 33:16
Great 9:21 11:2 12:19
Great. 8:15
grew 11:5
grounds 2:5
guess 9:5
guy 22:22
guys 25:20

< H >
had 13:20 40:3
had: 6:12
handed 28:19
Hang 22:7
happened 14:23
harassed 18:5
has 13:19 33:12
have 19:11 23:5 28:10 29:4 31:20 33:3 34:17 37:3 39:4
have. 36:15
having 35:9
he 25:17 32:11 37:22
head. 21:8 26:2, 9, 11 28:15 35:1
hear 36:4 37:16 38:23
heard 14:16

37:10, 12 40:4
hearing. 44:12
her 7:2
here 7:21
he's 11:2, 13 35:8
highest 12:5
him 20:17 31:13, 15 32:19 33:2, 23 34:5, 21, 23
him. 11:22 21:22 33:5 34:12 35:17 40:11
his 28:8 35:5
history 12:20
hit 41:8
home 10:7 11:6 14:8 18:2
Hopefully 8:5
hospitality 36:4
how 30:12
how's 34:7
Hubbard 4:23
Huh-uh. 24:16
husband 10:8 14:12 28:7 33:15
husband. 28:2
husband's 10:9

< I >
I 13:8, 9 15:4, 5, 13 18:6 20:9, 14, 14 21:2 23:6, 10 26:18 27:6 29:16, 18 30:23 31:4, 9, 10, 12 33:8, 21 34:6 38:19 39:3 40:9 41:13 42:14
I. 10:8
ID 28:11, 14 29:8
idea 17:10 23:22 34:16
idea. 32:21
if 20:2
I'll 8:4
Illinois, 5:11
I'm 41:19

impact 35:12
implication 41:23
in 14:21 15:23
25:2 30:9 35:7
44:7, 16
inappropriate
18:7
Inappropriate.
18:8
INC., 1:10 4:10
influence 8:11
information
15:11 18:22
21:22 40:10
41:16 42:17, 20
information. 20:4
31:13
intelligent 8:6
intending 18:12
intentions 19:11
interested 44:15
into 7:4
is 2:7 8:16 16:8
25:14
ISRAEL 5:5, 10
issues 13:12
it 15:9 20:2
26:18 30:18, 22
40:7 42:23
it. 30:11 36:12
38:10
its 18:17
it's 18:1 30:20
34:8 36:9 42:8
I've 41:13

< J >
JAFFE 4:22
James 5:10
Jefferson 12:18
44:4
Jim 7:13
John 4:22
Jr 1:20 4:19 6:8
June 14:1, 12
32:19 41:10
just 17:15 18:7
28:18 34:9
41:20 42:15

< K >
KAY 1:17 6:10,
14 10:2 32:11
kidding, 24:10
kin 44:14
kind 8:12 11:10
12:20 13:11, 18
15:12 16:4 22:5
23:18 24:2 34:8
35:8, 12 42:7, 20
knew 23:12
know 6:21 13:3,
14 14:18 15:5
16:7, 8, 23 18:14
21:19 23:14
25:5, 8, 9 28:4,
21 29:17, 20
31:9, 21 33:7
34:7 36:10, 11
37:9 38:12
40:15 42:12, 22,
23 43:2
know, 14:5
know. 9:20
17:17 28:6
knowledge 21:6
37:18, 22
known 10:21, 22

< L >
L. 1:17
lady 15:1
last 39:15
lawsuit 7:15 9:7
12:23
leading 2:3
learn 23:2
leave 15:16
led 38:21
level 12:5
License 44:21
life 34:17
like 11:12 29:12
LINDSEY 1:17
6:10 7:12 8:16,
19 10:12, 18
13:2, 12 17:21
27:17 36:18
37:3 39:12

LINDSEY, 1:7
4:7 6:14
Lindsey. 7:16
10:2, 11
line 25:2
lines 37:7
listen 16:5
litigation 24:3
little 31:17 32:6
live 33:10
lived 11:7
lives 10:6
living 12:15
loan 42:7, 12
long 10:14, 20,
22 17:11 20:15
look 28:13
looked 13:9
24:15 25:23
looking 13:8
42:13
lots 41:16, 20
loud. 26:13
Louisiana 5:7
love 22:23

< M >
ma'am 38:8
ma'am. 39:4
main 7:4
make 15:11
March, 1:21
married 10:15
married. 11:9
Master's 12:8
matter 16:2 23:9,
10 24:13 38:21
42:17
may 2:5 29:3
me 20:12 40:18
44:6
me. 7:5 15:12
32:13
mean 26:20 33:3
means 19:8 44:8
medication 8:12
meet 35:15
mentioned 37:10
42:15

message 12:2
messed 41:2
met 9:13 35:17,
18, 19
Metairie 5:7
MICHAEL 1:7
4:7 7:16 10:18
13:12 18:23
20:4, 18 21:13
22:22 24:17, 18,
20 26:3 42:6
Michael. 32:8
Michael's 15:4
Michelle 1:17
4:14 6:1 44:18,
19
might 41:23
Mike 31:2 37:18
mind 17:1 29:11
30:2, 10 37:8
mind, 38:21
minutes 9:5, 22
minutes. 8:10
Monroe 5:11
month 41:1
more 27:17
39:12
morning 7:12
Mr 3:5
Mrs 27:17
Ms 3:4, 6
Ms. 36:17
must 23:4
My 7:12 8:13
16:23 27:2 28:1
30:10 34:14

< N >
N 1:13
name 7:13 10:1,
10 15:16
Nana 32:12
NATHAN 5:4, 9
NCO 1:10 4:10
7:14 13:3, 6
14:1, 16, 18
16:20 17:18, 22
18:5, 13, 16
19:12 20:19

**Kay P. Lindsey**                                                                                     **49**

23:3, *13*  38:*12,*
*13*  39:*17*  40:*4*
**NCO.**  13:*22*
**necessary**  2:*1*
**need**  8:*8*  24:*21*
25:*8*  26:*4, 5*
**needs**  26:*12*
**negative**  35:*12*
**neither**  44:*14*
**Nelson**  4:*23*
**never**  14:*16*
24:*15*  34:*10*
35:*7*  40:*4*
**No.**  8:*21*  9:*8, 10,*
*15*  12:*21*  13:*1, 5,*
*13, 16*  14:*17, 20*
17:*12*  22:*20*
23:*21*  24:*1, 4, 7,*
*9, 14*  26:*15, 16*
28:*22*  30:*18*
32:*5, 23*  34:*19*
35:*6, 10, 14*  36:*7*
37:*21*  39:*8, 19,*
*22*  40:*2*
**nodding**  7:*23*
**nods**  26:*2*
**nonverbal**  8:*2*
*22:11*
**North**  1:*20*  4:*19*
5:*1, 6*  6:*9*
**NORTHERN**  1:*2*
*4:2*
**not**  37:*13*
**not.**  20:*10*  27:*4*
*43:8*
**notes**  25:*10*
**notes.**  27:*9*
**Nothing.**  25:*22*
**notice**  2:*9*  8:*18*
**now.**  19:*18*
**NUMBER**  1:*5*
*4:5*  15:*10, 16, 17*
18:*21*  19:*8*
42:*16, 19, 22*
44:*21*
**number.**  15:*18*
**NUMBER:**  3:*3*
**numbers**  43:*2*

**< O >**

**object**  6:*23*
*30:15*
**objections**  2:*2, 5*
**obviously**  28:*1*
**occurred**  29:*4*
**occurred.**  16:*11*
**odd**  15:*5*
**of**  1:*16*  6:*6*
7:*20*  8:*10, 11*
12:*5, 17*  13:*12*
16:*4*  17:*14*
18:*11, 21*  21:*4*
22:*5, 18, 21*
23:*18*  24:*3*  29:*4*
31:*9*  34:*13*  38:*1,*
*6*  44:*8*
**of,**  37:*7*
**offered**  2:*7*
**offices**  1:*18*
**Okay**  8:*15, 22*
9:*2, 13, 16, 21*
10:*6, 9, 17, 20*
11:*2, 5, 10, 14, 19*
12:*9, 14, 19*  13:*2,*
*11, 17*  14:*5, 21*
15:*19*  16:*3, 19*
17:*8*  18:*16*
19:*19*  20:*5, 11,*
*12*  21:*11*  23:*2,*
*17*  24:*2, 22*  26:*3,*
*20*  27:*5, 8, 19*
30:*12, 19*  31:*6,*
*23*  32:*6*  33:*12,*
*23*  34:*4, 20*
35:*11*  37:*22*
38:*18*  42:*2*  43:*4*
**Okay.**  7:*8, 17*
8:*1, 7*  11:*17, 23*
12:*3*  13:*21*  14:*2,*
*11*  16:*6, 9*  17:*2,*
*5, 20*  27:*7*  28:*3,*
*23*  29:*10, 22*
30:*5*  32:*9*  36:*1,*
*13, 16*  38:*4, 11*
39:*5, 14*  41:*15*
**on**  5:*7*
**on.**  20:*7*
**once**  33:*7*
**ones**  7:*5*

**on-line**  41:*2*
**only**  16:*19*  29:*21*
**opinion**  21:*17*
**or**  15:*15*  38:*20*
**oral**  6:*11*
**other**  11:*14*  30:*8*
**out**  26:*12*  39:*7*
*41:17*
**out.**  8:*6*
**owed**  13:*14*

**< P >**

**PAGE**  3:*3*
**paid**  41:*2*
**part**  40:*14*
**part.**  30:*6*
**parties**  1:*15*  2:*4*
*44:14*
**parties.**  8:*18*
**Parvin**  1:*18*  4:*14*
6:*1*  44:*18, 19*
**Pate**  1:*18*  4:*17*
**paying**  34:*18*
**Pearson**  10:*2*
**people**  41:*17, 22*
**peoples**  43:*1*
**period**  21:*3*
**person**  29:*16*
*30:3*
**personal**  16:*2*
19:*2*  23:*10*  24:*3*
34:*6*  38:*20, 21*
40:*17*  42:*16, 20*
**Personally**  40:*22*
**phone**  14:*9*
15:*10, 20*  17:*23*
26:*6*  37:*8, 12*
41:*7*  42:*19, 21*
*43:1*
**phone.**  12:*4*
*28:19*
**placing**  17:*23*
**Plaintiff,**  1:*8*  4:*8*
**Plaintiff.**  4:*21*  5:*3*
**plans**  38:*1*
**play**  13:*17*  16:*4*
**played**  27:*20*
**played.**  16:*14*
**please**  8:*9*  10:*4*
**please.**  10:*1*

**point**  19:*10*  20:*1*
23:*12*
**positive**  17:*15*
**possible**  29:*23*
30:*7, 13*  42:*3, 8*
**possible.**  42:*9*
**possibly**  29:*3*
**practice**  6:*22*
**prepare**  9:*3*
**pretty**  20:*13, 21*
36:*10*
**prevented**  34:*18*
**principal**  12:*17*
**principals**  12:*18*
**prior**  2:*7*  41:*9*
**probably**  20:*3*
**problems**  23:*19*
**Procedure**  6:*5*
**proceedings**  6:*12*
**produced**  8:*17*
**provided**  6:*4*
**purpose**  38:*6*
40:*15*
**pursuant**  8:*17*

**< Q >**

**question**  8:*3*
22:*15*  23:*6*  38:*5*
39:*16*
**question.**  9:*1*
**questioning**  7:*19*
**questions**  2:*3, 4*
25:*7*  26:*18*
27:*11*  44:*7*
**questions.**  8:*14*
25:*12*  26:*19*
27:*18*  39:*13*
**quick**  27:*6*

**< R >**

**read**  7:*2*  9:*4*
41:*18, 19*
**realized**  41:*7*
**really**  25:*1*  39:*3*
**really.**  14:*8*
**reason**  43:*2*
**received**  40:*20*
41:*10, 13*
**receives**  24:*8*
**recess**  27:*13*

recollection  17:6
33:20  34:3
record.  22:12
recording  9:11,
12  13:18  16:4,
13  37:10
records  13:23
29:8, 20
red  15:12  40:13
reference  15:4, 6
16:1  37:11, 20
38:2, 6  39:20
40:8, 9  42:7, 16
reflect  16:17
regarding  34:22,
23  35:4  39:16,
18  42:12
relate  12:1
relationship
10:18  11:11
21:13  22:18
32:7  35:13
relationship.
21:15
relayed  20:21
remember  13:8
14:5, 7, 22  15:1
17:16  20:1  23:7
29:12, 13  30:11,
13, 17  31:6, 10,
14  32:3, 22
33:23  40:9
remember.  38:3
41:14
remembered
20:14, 15  21:3
30:21
remembered.
29:19
rephrase  8:5
Reporter  4:15
6:2, 18  7:20
44:20
represent  7:14
representations
18:17
representative
20:19
represented  8:19

represents  44:10
respective  1:16
response  23:7
response.  40:16
responses  7:23
result  22:18
35:13  44:16
retired  14:14
retired.  12:13
review  24:12
27:9
reviewed  9:17
Richard  1:19
4:18  6:8
right  8:12  16:3
19:16, 18, 19
21:20  27:9  41:17
right.  14:4  21:1
27:5, 16  31:19
37:17
rights  17:22
Road  10:5
Rules  6:4

< S >
said  15:15  21:11
23:7  36:10  44:11
said,  15:17
said.  20:16
SAITH  43:8
same  30:3
saw  33:18
say  11:8  22:8
saying  7:22
19:2  38:20  41:20
Schools.  12:18
Schultz  5:10  7:6,
14  26:12  36:3
39:8  41:4
Seals  3:5  4:18
6:20  7:8  22:7,
10, 14  30:15
39:3, 6
SEALS:  37:1
second  16:21
17:1, 7  29:3, 12,
18  31:3, 7, 15, 18
see  25:10  33:6,
7, 16

seem  17:16
seemed  29:11
sent  40:13
separated  30:10
SESSIONS  5:4, 9
shakes  21:8
26:9, 11  28:15
35:1
she  15:3, 13, 14,
23  42:18
short  20:23  21:3
show  14:1  29:21
sign  7:2
So  20:16
so.  11:4  13:10
16:18
some  30:7
35:22  42:19
someone  18:2, 9
21:21
something  8:6
23:16  34:16  37:4
something.  23:8
son  11:20
sons  11:17
sons.  11:16
sorry,  42:4
sorry.  22:9, 13
26:14  35:3  37:16
sort  18:11  31:8
37:19  38:1  40:13
sound  14:3
sounded  28:8, 18
SOUTHERN  1:3
4:3  36:4
speak  13:6
32:15, 19  34:21,
22  35:4
specifically  37:23
spoke  25:9, 13,
15  29:13
spoken  34:4
stake  24:3
standard  36:10,
11, 12
started  7:18  41:1
state  7:22  9:23
10:3  44:3
STATES  1:1  4:1

6:5
stenotype  44:7
step  39:6
stepmother.
10:19
stepson  11:20
still  22:22
STIPULATED
1:14, 23  2:8
stipulation  6:6
stipulations  6:19,
20  7:3
stop  8:4, 9
strain  22:6
strained  22:18
Stratford  10:5
Street  5:1, 11
strong  18:6
submit.  41:8
Suite  4:23  5:6,
11
suppose  42:8
supposing  31:9
sure  15:11  21:5
22:11  31:10
38:10
Sure.  33:17
36:19  43:7
suspicion  23:15,
18
swear  17:3
29:17  30:3
sworn  6:15
SYSTEMS  1:10
4:10  7:15  13:4

< T >
T.  41:3
take  8:8  15:18
26:20  27:6
taken  1:17  44:6
taken.  27:14
talk  9:21  25:20
29:2  32:6  35:21
teacher  12:16
tell  14:21  19:22
20:11, 17, 18
24:18  25:1  36:5
39:17, 23

**term** 15:3
**terms** 19:2
**testified** 6:16
**testify** 24:19
26:4 27:1
**testimony** 44:11
**Thank** 36:17
43:5
**that** 9:17 15:2
16:11, 16 17:4, 6
18:5 19:18
20:18, 19 21:7
22:15 23:2, 12
26:7 28:4 29:5
30:13 36:3
38:23 39:17
40:6 41:22
**that.** 18:15, 23
23:16 25:10
31:22 33:20
38:8 40:19 41:5
42:10, 20
**that's** 7:6 36:14
43:5
**the** 2:5, 9 4:20
5:2, 12 6:10, 12
7:1, 18 9:5 12:1
15:19 22:11
23:5, 23 24:13
26:1 27:19 30:2
31:2 32:12
35:18 38:5, 7
44:9
**their** 1:15 40:16
43:2
**them** 38:19
**them.** 27:11
**then,** 30:22
**there** 7:2 17:7
**thereto** 44:8
**thereto.** 2:7
**they** 21:23 39:18
**thing** 34:8 36:9
**things** 7:20 34:9
40:8, 18 42:14
**think** 7:6 11:2
13:10 14:10
15:3, 22, 23 16:1,
18 17:14 18:1, 7,
16, 19, 21, 23

19:3, 5, 9, 13
22:10, 21 23:4, 4,
19 27:2 28:17
30:18, 21 31:8, 9,
16, 17 33:21
36:14 37:11
38:9, 22 40:19
41:12, 12, 22
42:11 43:4
**think.** 17:9
**thinking** 15:21,
22 24:23
**this** 11:19 13:18
16:7 29:3
**this.** 26:21
**thought** 15:5, 8,
13 29:18 30:2
**three** 11:8 42:14
**time** 2:6, 6
14:14 20:14
21:2, 7 25:8
26:21 31:12, 15
35:19 38:13
**time.** 21:4 36:20
43:6
**Title** 1:19 4:18
6:7
**to** 6:23 9:2, 22
15:10 16:3 17:3
18:17 19:5, 6, 8
22:14 24:21
25:8 26:4, 5, 23
30:4 31:21
33:15 34:4
38:10, 22 40:10,
14 41:9 44:15
**today** 8:17, 20
9:14 21:11
24:19 25:14
27:1 35:16
**today.** 21:10
**told** 20:13, 16, 18,
19, 22 24:20
37:11, 23
**transcribed** 44:8
**transcript** 9:11,
17 25:18 44:11
**transcript.** 9:6, 18
**transcription** 44:9

**trial** 2:6
**trouble** 35:8
**true** 44:10
**trying** 15:14, 14
18:22 19:6 40:9,
10 42:18, 19
**turned** 41:6
**twenty-seven**
11:1
**Twenty-six** 10:16
11:1
**twisted** 31:17
**two** 11:8, 16, 17
12:7 30:23
**type** 38:23

**< U >**
**Uh-huh** 28:8
**Uh-huh.** 10:13
15:7 19:21 22:2,
4 25:4, 19 27:22
32:18 35:20
37:14 38:15
40:12
**understand** 8:4
18:4 19:1 28:10
30:12 32:14
33:12 34:15
38:8 41:22
**UNITED** 1:1 4:1
6:5
**until** 25:8
**unusual** 15:9
**unusual.** 33:22
34:3
**use** 37:23 38:1
**used** 15:4
**using** 41:1
**Usual** 6:18, 20
**usually** 6:23 7:4

**< V >**
**verify** 15:15
18:20 40:10
**violated** 17:22
**voice.** 28:9
**vs.** 1:9 4:9

**< W >**
**waived.** 2:10

**want** 7:3, 19
16:5 22:11
27:19 29:2 37:4
38:9, 18, 19 39:6
**wanted** 15:10
**was** 15:2, 11, 14
16:13 18:16
21:22 23:15
27:13 37:8
38:13 42:12, 19
43:1
**was,** 23:14
**was.** 18:3
**wasn't** 42:11
**water** 35:23
**water.** 36:2
**way** 15:9 17:21
18:5, 21 19:7
31:21
**we** 37:9
**week** 28:5 32:17,
20 33:8
**week.** 32:16
**weeks** 17:15
33:8
**well** 12:7 18:1, 6
19:5, 13, 19
21:18 23:4, 14
28:1 30:23 31:8,
16 42:14
**went** 15:8 35:17
**were** 11:8 22:1
37:11
**we're** 31:8, 16
**West** 5:10
**We've** 41:4
**what** 12:15 14:6,
22 19:6, 14
20:13, 13, 22
31:6, 11 42:11
**when** 13:2, 9
34:21
**where** 23:22
**whereupon** 6:11
**Whether** 29:16
**which** 40:8
**Whitney** 4:17
8:23 9:13 24:19
25:9 35:16 42:3
**Whitney,** 25:13

**Whitney.** 24:*11*
42:*5*
**Whitney's** 39:*15*
**why** 27:*1*
**will** 6:*21*
**with** 11:*20, 22*
25:*6* 27:*9* 29:*14*
32:*7* 33:*1, 4*
34:*11, 22* 35:*16*
**witness** 6:*10*
21:*8* 22:*9, 13*
26:2, *9, 11, 14*
27:*7* 28:*15* 35:*1*
36:*16, 19* 39:*5*
43:*7* 44:*12*
**word** 18:*6* 36:*11*
**words** 14:*22*
37:*6*
**work** 14:*13* 25:*2*
**works** 28:*5*
**would** 11:*7*
14:*13* 15:*6*
26:*19* 31:*11* 34:*7*
**wouldn't** 9:*4*

**< X >**
**X** 3:*1*

**< Y >**
**y'all** 26:*18* 39:*6*
**Yeah.** 38:*17*
**year** 13:*7, 10*
16:*23*
**year.** 26:*7*
**years** 11:*8* 12:*7*
**years.** 10:*16*
11:*1*
**yes** 15:*18*
**yes.** 9:*12* 10:*23*
17:*19* 19:*15*
39:*2* 40:*23*
**yesterday** 25:*15,*
*17*
**you** 8:*3* 10:*20*
13:*19* 15:*20*
16:*23* 18:*18*
19:*10* 21:*12*
22:*7* 24:*22* 26:*3*
27:*20* 28:*21*
30:*13* 31:*7* 32:*3,*

*14* 35:*8* 36:*6*
37:*10, 12, 12*
38:*1* 40:*15* 41:*22*
**you.** 29:*21*
**you'd** 14:*16*
**your** 7:*22* 9:*22*
10:*6, 17* 11:*5*
14:*22* 22:*17, 19*
35:*12* 43:*5*
**you're** 7:*21* 19:*1*